JOHN W. SHARP, Respondent, v. Q., O. & K. C. RY. CO., Appellant.

Kansas City Court of Appeals, December 6, 1909.

1. **RAILROADS: Fence: Notice: When Not Required.** In an action to recover the cost of building a new fence along defendant's right of way through plaintiff's premises, under Revised Statutes 1899, section 1105, where defendant had erected a fence which was not a "lawful" fence as required by the statute, no notice to defendant is necessary.

2. ———: ———: **Character Of.** The fence constructed by the landowner must be of the character which the railroad is required to build, and the statute (R. S. 1899, sec. 3295) authorizing fences four feet high with posts sixteen feet apart in counties which have adopted the law preventing swine from running at large, has no application to fences along the right of way of a railroad as required by Revised Statutes 1899, section 1105.

3. **PRACTICE: Appellate: Change of Theory.** Where the case was tried in the circuit court and presented in the appellate court on the theory that a fence of the character prescribed in section 3295, Revised Statutes 1899, is proper along the right of way in counties where the law against swine running at large is in force, it will be determined in this court on that theory.

4. ——: **Justice Court: Evidence: Admissibility Under Pleading.** When plaintiff filed a statement before a justice of the peace sufficiently disclosing the cause of action claimed, and the statute on which it was based, it was not necessary to directly aver that the law restraining swine was in force in the county in order to render proof of such fact admissible.

5. ——: ——: **Pleading Sufficiency.** In actions instituted before justices of the peace, strictness is not required and great informality in pleading is allowed.

### On Rehearing.

6. **RAILROADS: Fence: Adjoining Owner: Compliance With Statute.** Substantial compliance with the statute is all that is required, not mathematical accuracy, and the fact that two panels of the fence in a distance of half a mile were slightly more than 16 feet apart will not bar a recovery.

7. ——: **Appellate: Theory at Trial.** The objections made and instructions asked in the trial court for a specific purpose will be considered in the appellate court for the same purpose only.

8. ——: ——: **Rehearing: Supplying: Assignment of Error.** When appellant on first hearing presents the case on one theory, and fails to assign error on certain rulings of the trial court as required by the rules and, as a result, the case is affirmed it cannot when a rehearing is granted supply the omission and thereby procure a consideration thereof.

Appeal from the Sullivan Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*J. G. Trimble* and *Wilson & Clapp* for appellant.

(1) The statute is penal and a strict compliance with all of its provisions must be shown in order to sustain a recovery. R. S. 1899, sec. 1105; Barnett v. Railroad, 68 Mo. 56; Railroad v. Ziegler, 108 Ill. 304. (2) The giving of notice of an intention to build a fence is not required by the statute. McNear v. Railroad, 42 Mo. App. 14. (3) A notice to repair is the only notice required or allowed by the statute where there is an existing fence. R. S. 1899, sec. 1105; McNear v. Rail-

road, supra. (4) Notice to repair must be given and in the manner the statute prescribes. Such notice is a jurisdictional fact. If no notice be given, or an illegal notice, or one not such as the statute contemplates, there can be no recovery. R. S. 1899, sec. 1105; State v. Railroad, 75 Mo. 526; Timmerman v. Snowden, 88 Mo. 218. (5) In actions on penal statutes every fact essential to a recovery must be affirmatively pleaded, and the rule applies equally to a statement filed before a justice of the peace. Wood v. Telegraph Co., 59 Mo. App. 236. (6) In this case as the posts were at least sixteen feet apart, there can be no recovery unless it was proved that the stock law was in force. But of this essential fact, there was no allegation in the statement. The admission of this evidence over defendant's objection was reversible error. (7) The setting of posts seventeen feet and ten inches apart is not a substantial compliance with the statute. The refusal of defendant's second instruction was error. R. S. 1899, sec. 3295; McNear v. Railroad, supra. (8) All fences composed of posts and wire must be at least four and one-half feet high with posts set firmly in the ground not more than eight feet apart. R. S. 1899, sec. 3295. (9) The obligation of a railroad to fence is not changed or altered by the adoption of the law restraining swine from running at large. Stanley v. Railroad, 84 Mo. 625; Morrow v. Railroad, 17 Mo. App. 103; Kingsbury v. Railroad, 156 Mo. 379; Growney v. Railroad, 102 Mo. App. 442.

*E. B. Fields* for respondent.

(1) The appellant did not have a statutory fence where its road run along and over plaintiff's land. R. S. 1899, sec. 3295, page 1871, hence, in law, no fence at all. Where there is no fence, notice is not required. McNear v. Railroad, 42 Mo. App. 14. And a defective notice would work no harm to defendant. McNear v. Railroad, 42 Mo. App. 14. But the notice was not defective, and was read to the jury without objection, hence

defendant cannot now complain. (2) A notice "to repair" would only mean to replace the old fence as it was. As it would not turn hogs it did not comply with the law yet the company could have fully complied with a notice to repair by replacing, that is restoring a five wire fence, which would have been wholly inadequate to turn plaintiff's hogs, and would not have been a lawful fence. "To repair" means to restore to a sound or good state after decay, injury, dilapidation or partial destruction." Verdin v. St. Louis, 131 Mo. 26. This definition is found on page 87 of same volume. From this definition it will be seen that to repair does not mean to build a different kind of fence such as would have to be built in this instance to comply with the law, but to "restore" the old fence. (3) This suit was commenced before a justice of the peace. No formal pleadings were required. R. S. 1899, sec. 3852. Any statement of the cause of action sufficient to bar another suit and to apprise the defendant of the nature of the claim is sufficient in suit before a justice of the peace. Iba v. Railroad, 45 Mo. 469; Razor v. Railroad, 73 Mo. 471; Key v. Railroad, 73 Mo. 475; Kansas City v. Johnson, 78 Mo. 661; Gibbs v. Railroad, 11 Mo. App. 459; Lewis v. Baker, 24 Mo. App. 682; Witting v. Railroad, 28 Mo. App. 103; Damhorst v. Railroad, 32 Mo. App. 350; Hill v. Scott, 38 Mo. App. 370; Boefer v. Sheridan, 42 Mo. App. 226; Dahlgren v. Yocum, 44 Mo. App. 227; Polham v. Railroad, 45 Mo. App. 153; Lee v. Telegraph Co., 51 Mo. App. 375; Wilkinson v. Insurance Co., 54 Mo. App. 661; Darby v. Jorndt, 85 Mo. App. 274; Cunningham v. Dickerson, 104 Mo. App. 410; Johnston v. O'Shea, 118 Mo. App. 287; Phares v. Lumber Co., 118 Mo. App. 546; Redel v. Stone Co., 126 Mo. App. 163. (4) The technical rules applied in the case of pleadings in the circuit court will not be enforced as to pleadings in justices' courts. Helland v. The R. H. Winslow, 25 Mo. 57; Quinn v. Stout, 31 Mo. 160; Mayer v. McCabe, 73 Mo. 236; Bradley v. Sweiger, 61 Mo. App. 419; Terti v. Insurance Co., 76 Mo. App.

42; Adams v. Ellis, 86 Mo. App. 343; Gunther v. Aylor 92 Mo. App. 161. (5) If the stock law was in force, the fence was sufficient. No other or different fence is required of a railroad company than of any one else, in counties under the stock law, except as hereinafter noted. The difference is that a railroad company must fence and others need not fence against swine and other like stock where the law restraining such stock from running at large is in force and in addition to the lawful fence prescribed by the statute, to-wit:—posts not more than sixteen feet apart with not less than three wires, the top one substantially four feet from the ground, a railroad company must, under the proviso at the end of section 3295, Revised Statutes 1899, fence against hogs, sheep, etc. R. S. 1899, sec. 3295. Nothing in this section indicates any other distinction and this is the view of the law held by appellant in its original brief and argument. All the cases cited by appellant in its last brief were cases where the railroad company either had no fence at all or had not fenced against swine. The court rightly held that the company was not relieved of the obligation to fence because of the stock law, without, so far as we can ascertain, passing on the question as to the kind of fence, except that it must be a lawful fence. (6) In counties where the law restraining swine and like animals from running at large is in force a lawful fence may be built of posts and wire, the posts set firmly in the ground not more than sixteen feet apart, with three wires tensely stretched thereon, the top wire substantially four feet from the ground, the other two placed at proper distances below so as to turn horses and cattle, and in case of railroads must be constructed so as to turn hogs, sheep, etc. Acts 1885, p. 166; Acts 1887, p. 194; R. S. 1899, sec. 3295.

ELLISON, J.—Plaintiff instituted this action before a justice of the peace to recover the cost of a fence

which he built on the line of defendant's right of way along or through plaintiff's premises. There was a judgment in plaintiff's favor before the justice and also on appeal to the circuit court.

The action is founded on section 1105, Revised Statutes 1899. Plaintiff served defendant with a written notice "to build me a hog tight fence along the north side of your railroad." The evidence disclosed that the railway company had a fence already constructed but that it was not a proper or legal fence from the start. It was composed of only five wires and was not constructed so as to prevent smaller domestic animals, such as hogs, from going through. It could not have been intended as a fence against hogs. The statute requires that the railroad must in the first instance build "lawful fences" on the sides of its road. And if it fails for three months after completion of the road, to build a fence "as herein required," the owner may build it and recover the cost, etc. If the fence thus required is once built and becomes out of repair, the owner may give five days' notice of such non-repair, naming the places where the defects are, and if the company fails to make the repairs the owner may do so and recover costs, etc.

We held in McNear v. Railroad, 42 Mo. App. 14, that notice need not be given in cases where a fence had not been built. That the notice was only required when repairs were wanted on a fence already existing. But it was, of course, meant that the fence already existing must be the lawful fence, sufficient to turn stock of all kinds, as required by the statute. When that kind of a fence is built by the railroad, then if it becomes out of repair, notice must be given to the road as a prerequisite to the owner's right to do the repairing himself and recover the cost. But if the fence required by the statute has not been built, though some other kind has been, it is not a question of repair, but is rather one of original construction and hence no notice to repair

is required.   To "repair" means to restore to a sound
or good state after decay, injury, dilapidation or partial
destruction (Virden v. St. Louis, 131 Mo. 1. c. 87), that
is, as applied to this case, to restore to original condition
as near as may be.

In this case the fence built by the railroad was not
the one contemplated by the statute.   It was a mere
makeshift so far as practical use by a farmer was con-
cerned.   A notice to repair would have meant a main-
tenance of the worthless fence.

The foregoing observations show the notice given
by plaintiff was unnecessary and it may therefore be left
out of consideration.

This brings us to a point which, but for a considera-
tion mentioned further on, would be fatal to plaintiff's
case.   The fence erected by the land-owner must be the
lawful fence which the railroad was required to erect.
The fence built by plaintiff was as far from being such
lawful fence as the original one.   The posts were set
sixteen feet apart and the top wire was only four feet
from the ground.   This description of fence was sought
to be defended on the ground that Sullivan county had
adopted the law preventing swine from running at large;
the statute (Sec. 3295, R. S. 1899) being that in such
counties fences composed of wire and posts need only
be four feet high and the posts sixteen feet apart.   But
that part of that statute refers to outside fences, other
than those required of railroads.   The idea of the Legis-
lature being that where cattle and horses were permitted
to run at large and hogs were not, a fence of three wires
on posts sixteen feet apart was sufficient.   But that does
not apply to the fence of a railway company running
along or through one's land.   The fence there required
is to keep the land owner's stock from getting out of his
enclosure, while the fence mentioned in the statute is
to keep stock at large from getting into such enclosure.
The railroad is required to erect and maintain lawful
fences just as it would if there were no stock law in

force. The stock law does not relieve them and has no bearing on the question. [Stanley v. Railroad, 84 Mo. 625; Morrow v. Railroad, 17 Mo. App. 103; Kingsbury v. Railroad, 156 Mo. 379.] In order to hold the railroad liable plaintiff should have built a fence such as the law required the road to build, which, as we have just seen, would be a lawful fence if there were no stock law.

But the case was tried on the theory that if the law restraining swine were in force in Sullivan county, the fence plaintiff built would be a proper fence, and that is the point as urged here both in brief and argument. Defendant's contention, both at the trial and here, was, and is, that plaintiff had no right to prove the adoption of that law by the people of the county for the reason that he had not pleaded that fact, and therefore his fence must be one with posts not more than eight feet apart, instead of sixteen. The brief and argument is a concession that if that was not error, plaintiff could recover so far as that branch of the case was concerned. Therefore, considering and deciding the case as tried and as it is presented here, we find that while there is no direct and affirmative averment of the adoption of the law restraining swine, yet the face of the entire statement filed with the justice discloses, clearly enough, the cause of action claimed and the statute upon which it is based. It would manifestly bar any other action for the same cause. It is scarcely necessary to say that in actions before justices, strictness is not required and great informality in pleading is allowed.

The judgment is affirmed. All concur.

## ON REHEARING.

ELLISON, J.—A motion for rehearing was sustained in this cause which complains of us for stating in the opinion that the case was tried in the circuit court on the theory that "if the law restraining swine

were in force in Sullivan county, the fence plaintiff built would be a proper fence." That is only half of what we stated. We stated that it had not only been tried in the lower court on that theory, but that it was tried, or rather heard, in this court, on that theory. Both statements are true, and either is fatal to defendant's appeal.

In the course of the hearing of evidence in the trial court there were but six objections made by defendant. Three of these were merely objections with no reason assigned, and two of the three with no exception saved. One was to a question as to the condition of the old fence, and one to a question as to which was the cheapest. Neither of these has been noticed or mentioned in this court. But to plaintiff's offer of evidence that Sullivan county had adopted the law restraining swine, there was a specific objection, which being overruled, an exception was taken. That objection was "for the reason that there is no allegation in plaintiff's statement that such a law is, or was in force in this county." It is true that there was a demurrer to the evidence offered by defendant and refused by the court, which in the absence of anything limiting its meaning, would cover the point that plaintiff had not built such a fence for the building of which defendant was liable to pay. And so, also, defendant offered, and the court refused, an instruction that unless the plaintiff had built a fence four and one-half feet high with posts not more than eight feet apart, he could not recover. But the face of the record shows that the reason causing the offer of these instructions was that (on account of omission in pleading) there was no proper or legitimate showing that Sullivan county had adopted the swine law, which law authorized a fence such as plaintiff built. This is all made additionally clear by the brief and argument in this court. But, cutting out of consideration all reference to the real intention of the defendant in offering the instructions refused and allowing to it the

benefit of the full breadth of them as they read, we will proceed to consider the case as it has been presented in this court and place our decision on that branch of the case.

The laws of this State have provided courts for the trial of controversies between parties, and when a judgment is obtained against one of them it is a final and conclusive determination of the controversy, except that the losing party has a right to complain of errors in the trial. This complaint must be first made in the trial court. The trial may be replete with errors, yet if he does not choose to complain to the trial court and ask that they be corrected, the judgment is as final and conclusive as if no error had been committed. If his complaint is overruled by the trial court, he may take such errors, or as many of them as he chooses, to an appellate tribunal established by the law for the correction of errors. In point of practice, parties knowing that on appeal they can only complain of such errors as they complained of in the trial court, enter complaint or assert many more errors in that court than, on consideration afterwards, they care to urge in the appellate court. So to facilitate the disposition of appeals in the appellate court and that it may be known what errors the appellant relies upon, he is required by the statute (Sec. 863, R. S. 1899) to furnish the court with a brief containing the points intended to be insisted on; and this cannot be neglected, even by agreement of the parties. [Disse v. Frank, 52 Mo. 551; Mister v. Corrigan, 17 Mo. App. 510.] And this court has adopted rules requiring the points and legal propositions relied upon for reversal of the judgment of the trial court to be stated, alleging separately and distinctly the errors committed by the trial court, and declaring that no reference will be permitted to any error not thus specified (Rules 15 and 17), and the Supreme Court (Rule 15) and the St. Louis Court of Appeals (Rules 15 and 18) have the same.

It is apparent that under the statute and rules no error not thus claimed and pointed out in the brief, should be noticed by the appellate court. Claim of error raised in the trial court not thus pointed out will be waived by the claimant. [Elliott's App. Procedure, secs. 438, 444.]

The parties submitted the case in this court on briefs and printed argument, and applying the foregoing statement of the law and the rules of court to defendant's brief, we find no mistake was made or injustice done in the original opinion. The brief states and cites authorities to show that the statute is penal. It is then stated that notice of an intention to build a fence is not required—that a notice is only required where a fence is to be repaired; and then it is stated that the notice must be given in the manner required by the statute.

The opinion shows that notice was only required where a repair was to be made of a fence originally built as the statute directs, and as the defendant had not built such a fence, a notice was not required; and thus the question of notice and most of defendant's brief was disposed of.

It was next pointed out in the brief that in actions on penal statutes every fact essential to a recovery must be affirmatively pleaded, and that (italics ours), "In this case as the posts were at least sixteen feet apart there can be no recovery *unless* it was proved that the *stock law was in force.* But of this *essential fact* there was no allegation in the statement. The admission of this evidence over defendant's objection was reversible error."

Coming to the printed argument we find that perhaps the greater part of it relates to the matter of notice, which we need not refer to further. Then it is therein said (italics ours):

"Again, *if there is no stock law in the county* the posts must be set not more than eight feet apart. *If*

*the stock law is in force they can be set sixteen feet apart.* The best that can be said of the fence that Sharp built, was that he aimed to set the posts sixteen feet apart. *If there was no stock law the fence he built was clearly not a legal fence.* It is important therefore in this case to know whether the stock law was in force or not. The statement does not allege that the law was in force. It does not refer to it at all. Nor was any attempt made to amend the statement. But plaintiff sought to cure the defect and to make out his case by offering to prove it. To this offer we objected because there was no such allegation in his statement. But our objection was overruled," etc.

The foregoing covers the entire brief and argument save the last point in the brief. There is no suggestion or intimation of any other error. As we have above stated, the motion for rehearing recites that defendant filed a demurrer to the evidence in the trial court and also asked instruction numbered 1, in regard to the distance apart of the posts. But the error of refusal of those instructions is not mentioned in the brief or argument. On the contrary the argument just quoted stated that the reason the posts must not be more than eight feet apart was that there was no stock law, and *affirmatively admitted* that if there was a stock law the posts could be sixteen feet apart.

The last point in the brief, to which we just referred, was as to the refusal of defendant's second instruction, in which it was declared that if "any of the posts in the fence were more than sixteen feet apart," plaintiff could not recover. This point though made in the brief we did not notice in the opinion because we deemed it a mere formal assignment without merit. It is not afterwards referred to by the defendant. There was but one witness for the defendant and he was on the subject of the distance of the posts apart. He had been sent out by defendant for the purpose of measurement. He found only two, in a half mile of fence, that

were more than sixteen feet apart.    Though the statute must be substantially complied with, mathematical precision is not required.    Substantial compliance was shown and it was quite proper to refuse an instruction on the evidence referred to, especially one that submitted so restricted an hypothesis as whether *"any"* of the posts were *"more* than sixteen feet apart."

At the rehearing it was conceded in the argument by defendant's counsel that no point was made or suggested in the defendant's brief and argument concerning the action of the trial court in refusing the demurrer to the evidence or instructions offered.    The brief and argument submitted by defendant forced such concession, for there is no room to doubt that defendant's position in this court was that but for the defective pleading plaintiff's recovery was proper.    The record shows that defendant admitted at the trial that the law restraining swine had been adopted in Sullivan county, but contended that it was not proper evidence because not pleaded.

But defendant now contends that notwithstanding its admission and its omission to present in its brief and argument any other points against the judgment than those noticed by the court in the opinion, yet since a rehearing was granted, it now has the right to present the points originally omitted.    The case of Linahan v. Barley, 124 Mo. 560, is cited in support of such asserted right.    While that case was not overruled in Reno v. Fitz Jarrell, 163 Mo. 411, as to this point, yet we do not think it touches the question we are now considering.    Here a party fails to secure the reversal of a judgment rendered against him by a trial court, for the reason that he did not bring the error to the attention of the upper court on appeal as required by the statute law and the rules of court.    The upper court thinking possibly it may have done the party an injustice, a rehearing was granted that the question might be considered again.    Now if the mere granting a motion for

rehearing forgives the omission of the party at fault, then there could be no proper consideration of such motion, in such cases, since the court would be confronted with the knowledge that to grant a rehearing, meant, in effect, to relieve the party of his default. If the court did not overrule the motion, it would save time by refusing to enforce the statute and rules in the first instance.

If we are to allow the statute and rules of court any effective force, we must affirm the judgment. All concur.